<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2

 3
                                         )
 4    UNITED STATES OF AMERICA,          )
                                         )
 5          Plaintiff,                   )
                                         )  Criminal Action
 6    v.                                 )  No. 1:21-cr-10359-AK-1
                                         )  Pages 1 to 27
 7    JOSHUA WESTBROOK,                   )
                                         )
 8          Defendant.                   )
                                         )
 9

10

11              BEFORE THE HONORABLE ANGEL KELLEY
                   UNITED STATES DISTRICT JUDGE
12

13                         SENTENCING
                   (Sealed sidebar removed.)
14

15                     February 15, 2024
                          2:38 p.m.
16

17         John J. Moakley United States Courthouse
                     Courtroom No. 8
18                   One Courthouse Way
                 Boston, Massachusetts 02210
19

20

21

22              Linda Walsh, RPR, CRR
                 Official Court Reporter
23    John J. Moakley United States Courthouse
                   One Courthouse Way
24              Boston, Massachusetts 02210
                  lwalshsteno@gmail.com
25
</pre>

1    APPEARANCES:

2    On Behalf of the Government:

3         UNITED STATES ATTORNEY'S OFFICE
          By: AUSA Alathea E. Porter
4         1 Courthouse Way, Suite 9200
          Boston, Massachusetts 02210
5         617-748-3318
          alathea.porter@usdoj.gov

6

7    On Behalf of the Defendant:

8         LAW OFFICE OF C.L. MALCOLM
          By: Christopher L. Malcolm, Esq.
9         15 Court Square, Suite 1150
          Boston, Massachusetts 02108
10        617-645-0089
          clmalcolm@gmail.com

11

12

13

14

15

16

17

18

19

20

21

22                  Proceedings reported and produced
                     by computer-aided stenography.
23

24

25

P R O C E E D I N G S

THE CLERK:  All rise.

THE COURT:  Please be seated.

You can call the case.

02:38  THE CLERK:  The United States District Court for the District of Massachusetts is now in session, the Honorable Angel Kelley presiding.  Today is February 15th, 2024. Criminal Action 21-10359, United States versus Joshua Westbrook will now be heard before this Court.

02:38  THE COURT:  Okay.  Counsel, can you please state your appearances for the record.

MS. PORTER:  Good afternoon, Your Honor.  Alathea Porter on behalf of the United States.

MR. MALCOLM:  And good afternoon.  Chris Malcolm.  I

02:38  represent Mr. Westbrook, present at the table.

THE COURT:  All right.  Good afternoon to you.

Any family members or supporters here that should be acknowledged?

MR. MALCOLM:  Not today, unfortunately.  He does have

02:38  family support.  He's very close to his sister, who is unable to get childcare, and his dad has an unexpected doctor's appointment that came up, something urgent.  They're in contact with me regularly.

THE COURT:  Can I get Probation's appearance.

02:39  U.S. PROBATION:  Good afternoon, Your Honor.  Crystal

1    Monteiro for Probation.

2            THE COURT:  Thank you.  And Counsel, you wanted to see

3    me at sidebar; is that right?

4            MS. PORTER:  Yes, Your Honor.  We can do that now.

02:39  5        (At sidebar.)

6                            *  *  *  *  *

7                      SEALED SIDEBAR REMOVED

8                            *  *  *  *  *

9            (End of sidebar.)

02:41 10        THE COURT:  Mr. Westbrook, I want to go over a few

11    things.  Back when there was the original change of plea that

12    we had scheduled, it was back in April of last year, and we

13    were doing that by Zoom, at some point during that hearing we

14    lost the connection with your lawyer.  And so I just want to go

02:42 15    over for the record what took place on that day and how we

16    reached where we are now.

17            And so I'm reviewing the portions of the transcript

18    from April 2023.  And so it was -- while everyone was still

19    connected, I asked you, sir, whether or not you understood the

02:42 20    elements of the offense that the government would have to prove

21    beyond a reasonable doubt for you to be found guilty at trial,

22    and your answer was yes.

23            I then asked the prosecutor to give me a statement of

24    the factual basis for the plea.  She then went on and recited

02:42 25    those.  And I asked you afterwards, sir, whether or not you

1   heard and understood everything she said.  You told me yes.

2   And I asked you whether or not you agreed with the factual

3   summary.  You said yes.

4         And I asked you whether or not you dispute any of the

02:43 5   substantial facts that form the basis of the charge against

6   you, and you said no.

7         I also asked, do you agree with the total weight for

8   which you are responsible; the answer was yes.

9         And I asked you if you were pleading guilty of your

02:43 10  own free will because you are in fact guilty and for no other

11  reason, and your response was because I'm in fact guilty.  And

12  I stated I couldn't hear you.  Could you please repeat.  And

13  you said because I am in fact guilty.  Do you recall that, sir?

14        THE DEFENDANT:  Yes.

02:43 15        THE COURT:  And it was at that point in time that we

16  lost connection with your attorney on Zoom.  And I had asked

17  Attorney Malcolm did you discuss with your client the elements

18  of the offense he's charged with and any defenses that he might

19  have, and then that's when I received no response and realized

02:44 20  that he had been disconnected.

21        So we were at that stage of the Rule 11 hearing where

22  you were changing your plea to guilty.

23        What I then stated was that we need to reschedule this

24  for the next day or so because we were attempting to reach your

02:44 25  attorney during that call but we were unsuccessful.  Your

1    response was we don't have to go through -- we don't have to go

2    through everything all over again, right?  And I told you that

3    we would pick the next date, and we would review it with your

4    attorney.

02:44  5         And you told me, I just want to let you know that I

6    understand, you know, everything that's going on.  And you said

7    I just want to let you know that I understand everything that's

8    going on and my attorney, you know, told me that you guys would

9    like to push things forward and wrap things up.  I'm not going

02:45 10   to waste any more time.

11         You also said that it's everyone's wish that we can

12   get this case wrapped up, and the 15 months that I've been in

13   now, you know, I'm just ready to, you know, move on and, you

14   know, get things on with my life and go to the actual Bureau of

02:45 15   Prisons because I know there's more opportunities for me there,

16   and, you know, programming and have things to change my life.

17   It's time for me to move on and make things better, not just

18   for me but my family.  So you just wanted to wrap things up and

19   hopefully everything can go quickly because this place kind of

02:46 20   sucks is what you told me.

21         And I explained to you that I heard and understood,

22   but you were rather insistent that you wanted to go forward on

23   that date.  And I explained to you that I had a few questions

24   for your attorney, but let me make sure that I go over those

02:46 25   questions with you.  And I explained that what I understood you

1    to say before is that -- before we took the recess was that you

2    wanted to go forward with pleading guilty.  You've done a lot

3    of reflection and you wish to move forward so that you can get

4    to the Bureau of Prisons for your sentence where there's a lot

02:46  5    more services available to you.  I asked if that was correct.

6    You said yes.

7         I also said that I wanted to make sure that your

8    attorney spoke to you about the elements of the offense and any

9    defenses that you might have regarding the case, and I asked

02:47 10    you did he do so.  You said yes, he did.

11         I also asked, did he discuss with you your decision to

12    plead guilty and you had an opportunity to ask him any

13    questions that you might have.  You told me yes, we discussed

14    it at length, actually yesterday.

02:47 15         And because of that, sir, I did accept your guilty

16    plea at your insistence rather than rescheduling for another

17    date, and so now that your attorney is here, I just want to

18    confirm that nothing has changed.

19         Sir, do you still want to go forward with the Court's

02:47 20    full acknowledgment of your guilty plea and acceptance of that

21    and move forward with sentencing here today?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  And Counsel, did you in fact

24    discuss with your client the elements of the offense and any

02:47 25    defenses that he might have regarding this case?  Because this

1    is where we fell off on Zoom.

2        MR. MALCOLM:  Yes.  I do apologize for that, but we

3    have gone over everything.  We have gone over the elements and

4    the defenses.

02:48  5        THE COURT:  Okay.  And did you discuss with him his

6    decision to plead guilty?

7        MR. MALCOLM:  Yes, I did.

8        THE COURT:  And is there any reason that you believe

9    that he may be pleading guilty or pled guilty for some reason

02:48 10    other than the truth of the matter, such as he could be under

11    some pressure to do so, some threats or promises had been made

12    to him?

13        MR. MALCOLM:  No, Your Honor.  I have no concern.

14        THE COURT:  Is there anything, Mr. Westbrook, that you

02:48 15    want to add with regards to where we took -- where we left off

16    last time when I accepted your guilty plea?

17        THE DEFENDANT:  No, I have nothing.

18        THE COURT:  All right.  So again, the Court finds that

19    you were in fact fully competent on the last date and even

02:48 20    today to move forward with this guilty plea and your acceptance

21    of responsibility and move forward with sentencing.

22        Let me address one more point.  And the question -- I

23    noticed you acknowledged someone.  Did you want me to

24    acknowledge her publicly?

02:49 25        THE DEFENDANT:  Yeah, sure.

1      THE COURT:  All right.  Who is that?

2      MS. SCULLY:  (From the gallery)  Hannah Scully.  I'm

3  friends with his sister.

4      THE COURT:  All right.  Well, I'm glad to see that you

02:49  5  have someone here at this important occasion to be here in

6  support of you, sir.

7      So on one of the prior dates, and we've had a couple,

8  I got the impression that there may have been some breakdown in

9  the relationship between you and your attorney, and I just want

02:49 10  to make sure that if that was true, has that been resolved and

11  are you satisfied with the representation that you've received?

12      THE DEFENDANT:  Yes, I'm satisfied.

13      THE COURT:  All right.  And do you feel that your

14  attorney has acted on your -- has acted reasonably in this case

02:50 15  and in your best interest?

16      THE DEFENDANT:  Yes.

17      THE COURT:  So if the parties are satisfied, we'll

18  move forward with sentencing.

19      MS. PORTER:  Yes, Your Honor.

02:50 20      MR. MALCOLM:  Yes, Your Honor.  Thank you.

21      THE COURT:  Mr. Westbrook?

22      THE DEFENDANT:  Yes.

23      THE COURT:  All right.  So today we're scheduled for

24  your sentencing hearing.

02:50 25      On April 5th, 2023, you pled guilty to one count of

1    distribution and possession with intent to distribute 50 grams

2    or more of fentanyl -- excuse me, not fentanyl --

3    methamphetamine.

4            Allow me to review a number of matters and hear from

02:50 5    you all.  I received and reviewed the indictment and

6    presentence report that was prepared back on July 19th, 2023,

7    and the parties' sentencing memoranda.  To my knowledge,

8    nothing else has been submitted by the parties to the Court,

9    but I want to confirm with counsel; is that right?

02:50 10           MS. PORTER:  Nothing that I'm aware of, Your Honor.

11           MR. MALCOLM:  Nothing, Your Honor.

12           THE COURT:  And Officer Monteiro, was any information

13    withheld from the presentence report?

14           U.S. PROBATION:  No, Your Honor.

02:51 15           THE COURT:  And are the parties anticipating an

16    evidentiary hearing today?

17           MS. PORTER:  No, Your Honor.

18           MR. MALCOLM:  No, Your Honor.

19           THE COURT:  And you may now have another supporter

02:51 20    here.  I don't know if you noticed someone entered the

21    courtroom, Mr. Westbrook.

22           MS. SCULLY:  (From the gallery)  He is with me.

23           THE COURT:  Attorney Malcolm, have you had an

24    opportunity to review all the materials submitted in connection

02:51 25    with this sentencing and have you gone over them with your

1    client?

2              MR. MALCOLM:  Yes, I have, Your Honor.

3              THE COURT:  Mr. Westbrook, have you reviewed all the

4    materials and discussed them with your attorney?

02:51  5              THE DEFENDANT:  Yes.

6              THE COURT:  And again I'll ask you, are you satisfied

7    with the legal representation and counsel that you've received?

8              THE DEFENDANT:  Yes.

9              THE COURT:  So I've read the PSR, and I see that no

02:51 10    objections were made.  Are there any that need to be registered

11    now?

12              MS. PORTER:  No, Your Honor.

13              MR. MALCOLM:  No, Your Honor.

14              THE COURT:  The PSR calculates the total offense level

02:51 15    to be 33.  Is there any objection to that?

16              MS. PORTER:  No.

17              MR. MALCOLM:  No, Your Honor.

18              THE COURT:  The PSR calculates the criminal history

19    category to be II.  Any objections to that?  Wait a second --

02:52 20    there's a score of 3, Category II.

21              MS. PORTER:  Yes, Your Honor.

22              MR. MALCOLM:  Category II, correct?

23              THE COURT:  Category II.

24              MR. MALCOLM:  Yes, no objection.

02:52 25              THE COURT:  Yes, I misspoke on that.  Based upon an

1    offense level of 33 and a criminal history score of III --

2        MR. MALCOLM:  II.

3        THE COURT:  Wait a second.  Score of 3 but a category

4    of II, the possible penalties are 151 to 188 months

02:52  5    incarceration, five years of supervised release, a fine of

6    between $35,000 and $10 million, and a $100 special assessment.

7    Are there any objections to this statement of the recommended

8    sentence under the guidelines?

9        MS. PORTER:  No, Your Honor.

02:52 10        MR. MALCOLM:  No, Your Honor.

11        THE COURT:  Does the government wish to be heard with

12    regards to sentencing?

13        MS. PORTER:  Just briefly, Your Honor.

14        The government filed a sentencing memorandum last

02:53 15    July.  I just want to highlight a few of those points.  The

16    government is recommending a low end guideline sentence here,

17    which is a sentence of 151 months in prison.  The basis for

18    that recommendation, Your Honor, really relates to the nature

19    of this particular offense.  Methamphetamine, as this Court may

02:53 20    be aware, is an incredibly dangerous drug.  Unlike fentanyl,

21    which we are talking about so often in this Court and

22    throughout our community, methamphetamine has quite a different

23    effect on its users.  It is also incredibly addictive, but it

24    is something that often will live with people for years.  The

02:53 25    defendant himself suffers from addiction and so he is well

1    aware of it.  But even knowing that, he continued to sell it

2    and distribute it in good large quantities, Your Honor.

3         He's responsible for over 800 grams of almost entirely

4    pure methamphetamine.  And the government cited to multiple

02:53  5    statistics in its sentencing memorandum, and I hope that the

6    Court was able to review those prior to today because they

7    really do paint a really devastating picture of what this

8    substance does to our community.  It is something that people

9    live with as an addiction through their lives.  It causes

02:54 10    psychosis, among other things; a really horrible, devastating

11    drug that disrupts people's lives.

12         Instead of something like fentanyl, which is

13    incredibly dangerous, we talk about all the time where people

14    die from it, this just destroys lives, people who live with it

02:54 15    for their lifetime, and it will completely ruin them and their

16    families and everyone around them.

17         It was a very serious drug, and the defendant was

18    involved in distributing significant quantities of that drug.

19    The nature of that offense warrants a very significant

02:54 20    sentence, and anything below the guidelines simply would send

21    an incorrect message to the general public with respect to

22    promoting respect for the law and general deterrence.

23         This defendant is young himself, but it is not his

24    first offense.  Even at this young age he already is at a

02:54 25    Criminal History Category II for his prior conviction.  He is

1    looking at a very significant sentence, as this Court is bound

2    to sentence him nothing lower than ten years, but sentencing

3    him to the mandatory minimum required by the statute would not

4    send the appropriate message to promote respect for the law or

02:55    5    to create general deterrence and potentially specific

6    deterrence to this particular defendant as well.

7        That is the basis for the government's recommendation,

8    Your Honor.  And we will rest on that and the papers, unless

9    the Court has any questions.

02:55    10    THE COURT:  Thank you, Counsel.  I don't have any

11    questions for you.  Counsel, would you like to be heard?

12        MR. MALCOLM:  Yes.  Thank you, Your Honor.

13        Mr. Westbrook is suggesting that the mandatory minimum

14    is more appropriate both for his deterrence and punishment and

02:55    15    rehabilitation.  This is someone who is, again, a very young

16    man.  He's 27 now.  Been in custody for two years, though,

17    going back to 25, and struggled with addiction since he was a

18    very, very, very young youth, child, I would even suggest.  The

19    presentence report goes through a lot of the history.  His,

02:56    20    really, family is his sister, in and out of foster care

21    together and separate.  He was put on the wrong track from a

22    very young age.  He identifies as an addict.  He will forever

23    identify as an addict.

24        But he's used these last two years quite wisely.  He

02:56    25    looks so much better than he did when I first met him last year

and even the last few months.  He's just been doing so much
more for himself, which I suggest even in two years, and will
just continue to exponentially grow over the next eight years
to ten more years, if the Court does sentence him to the
guidelines.

The defendant looks in the mirror now and he sees
someone that has self-worth again for the first time.  He was
struggling as an addict for years, which he knew and what was
comfortable for him.  It was an obsession with the
methamphetamine.  It's certainly incredibly addictive, but it
was all life-consuming for the defendant.  It's what he did
morning, day and night, 24/7.  It was about the meth, about
supplying his girlfriend or his party group and supplying
himself.

He recognizes the damage that he's caused, the damage
to the community.  He recognizes how seriously this can take
over.  As the government stated, this does destroy lives, and
it was very well destroying his.  Thankfully he's a young man
and the Court and the government did intervene.  He recognizes
that.

The defendant has been finding that self-worth again
through self-care.  He's eating better.  He's in the gym
regularly, taking care of himself, and he's back in church,
which has been very helpful for him.  He has been eager to get
to the Bureau of Prisons, as he stated last year, for the

programming, for as much treatment, counseling as he can get
himself into.

I suggest he would be a good candidate for the RDAP
program.  This is somebody who admits -- as I said, he's an
open book, and he takes his choices very seriously now.  He
understands that there's incredible consequences that come with
those choices, those choices that were all consumed, though, by
the need to get the next batch of methamphetamine.
Unfortunately for him, he made the choice to put himself in a
position to surround himself with connections, with associates,
with resources that were not in his best interest, and he
surrounded himself with a lifestyle at that point of consuming
the meth.  When he had essentially a connection to obtain the
meth at very good price, he continued to be used in a way where
he made it such an easy avenue to supply others.  He recognizes
that and he is regretful of that.

The person that he's become, I suggest, is somebody
that we're not going to see again with at least a ten-year
punishment.  120 months is an incredibly long time, and I
suggest that the legislature has put in that mandatory minimum
for a significant reason.  However, I would suggest the
difference between 120 and 151 months requested by the
government doesn't further the goals of sentencing.

I suggest that it's been already very useful for the
defendant.  That age period between 18, 20 up to 24, 25, he's

still growing, he's still developing, he's still finding
himself, and he was hiding from himself.  He was hiding from
his trauma.  He was hiding from his difficult upbringing and
not reflecting on how to grow up in a healthy way, how to find
help, how to find coping skills, and to use the resources that
are available.

The Bureau of Prisons he is excited for to continue
his efforts finding those resources and continuing to learn.
This is someone who was going from essentially ten years of
using drugs every day and, I would suggest, now ten years
without drugs.  It's a significant period of life to go from
essentially 25 to 35.  A lot happens.  He knows that he needs
to deal with the addiction every day.  He's prepared for that,
he recognizes that, and he looks forward to using his time as
wisely as he has most recently.

Certainly it took a long time for him to grow up.
He's still growing up, but he's on the right track.  And I
suggest the ten-year sentence that we're asking for, the
mandatory minimum of 120 months, sufficiently punishes him,
sufficiently deters this individual and, I suggest, even deters
the general public.  A ten-year sentence is a life-changing
sentence.  It's not one year, two years, three years.  This is
a life-changing sentence.

Anywhere up to 151 or 180 months, I would suggest, at
that point becomes a bit harsh for this defendant at his age

1    with his history of drug use that really is responsible for

2    everything on that criminal history.  It happened very close in

3    time, decision after decision, like I said, was a lifestyle for

4    him.  Here we have someone who is essentially using the meth at

03:01    5    such a high rate, it was a necessity and a financial necessity

6    to essentially get as much at the right price that he could

7    possibly get.  He was in and out of jobs.  He was able to still

8    obtain some money legally; however, it was nowhere near what

9    his habit was.

03:01    10        He was smoking about 7 grams a day, between him and

11    his girlfriend, maybe a party on the weekend.  He was consuming

12    about a pound of meth a week.  It's an incredible amount of

13    methamphetamine, and the price that it would cost is not a

14    habit that can be supported by his income or any legal means

03:02    15    that he had, and he chose the wrong path to continue to fuel

16    that addiction.  He recognizes that, and if we keep

17    Mr. Westbrook sober, off drugs, then we will not see him again.

18    This is a man that was consumed by it, and thankfully he's

19    taking his time to consume himself again with self-worth,

03:02    20    self-betterment, and he's much more into his health and his

21    future.

22        To be healthy reflects on his decision that he wants a

23    bright future and he does not want that to consume him again.

24    It's not the lifestyle that he would like to see for himself,

03:02    25    for his sister that he loves dearly, who struggled with very

similar issues.  She was able to find her way out in other

ways, thankfully, and he's thankful and grateful for that.

He's grateful for the support.  He's grateful that he

was reunited with his father, but it's been a long road for him

03:03  and he's got a long road ahead.  He knows that.  I would

suggest with the ten-year sentence under his belt and five

years of supervised release, he does have a bright future.  He

will still be a very young man upon his release regardless of

what sentence the Court imposes.  He does look forward to that

03:03  next chapter.  He has several more chapters to go in custody,

but I suggest if he uses his time wisely and with the proper

treatment plan and the proper release plan and his own

self-control, he is not someone we're going to see again.

THE COURT:  Mr. Westbrook, if you would like to be

03:03  heard, now's the time.

THE DEFENDANT:  I would just like to say that I know

what I was doing now, after the past two years that I've had to

reflect on everything I knew; and I'm grateful for the way that

things ended up happening for me because I knew that when I was

03:04  using that the only way that I was going to stop was if I was

dead or if I was put in jail.  So being arrested and put in

jail and having time to reflect on my situation I say is a lot

better than being dead.

I am regretful.  I know the damage that I caused

03:04  myself and the position that I was in.  I could only imagine

1   what things would be like for other people who weren't as

2   fortunate in their addiction as I was.  And I see people

3   nowadays, people coming into jail for 30 days, 60 days, 90 days

4   and people who were coming off of drugs that were on meth, on

03:04  5   fentanyl, all of that, and I see myself back then, and it just

6   reminds me, like, of how desperate I was and how hopeless that

7   I was.

8          So I'm going to leave the decision up to you guys, but

9   at the end of the day, you know, whatever I get is what I get,

03:05  10   and I leave it up to God.  Thank you.

11          THE COURT:  Okay.  Thank you.

12          MR. MALCOLM:  Thank you.

13          THE COURT:  I am going to take a brief recess.

14   Someone else entered.  I don't know if that's your sister.

03:05  15          THE DEFENDANT:  Yes.

16          MR. MALCOLM:  It is.

17          THE COURT:  All right.  I'm glad that you were able to

18   make it.  You've been mentioned several times so far in the

19   time that you were not here.  So it underscores to me how

03:05  20   important you are to him, so let me say that I recognize your

21   presence.

22          Give me a few moments.  Let me step off the bench, and

23   I'll come back with my decision.

24          MR. MALCOLM:  Thank you, Your Honor.

03:06  25          THE CLERK:  All rise.

|  | 1 | (Recess taken from 3:02 to 3:12 p.m.) |

1      (Recess taken from 3:02 to 3:12 p.m.)

2      THE CLERK:  All rise.

3      THE COURT:  You may be seated.

4      THE CLERK:  We're back on the record in the Westbrook

03:16  5  matter.

6      THE COURT:  In consideration of what a reasonable

7  sentence would be here, I must consider and have considered all

8  of the factors under 18 U.S.C. Section 3553(a).  That includes

9  the nature and circumstances of the offense, Mr. Westbrook's

03:16  10  personal and criminal history and characteristics, the kinds of

11  sentences available, the kinds of sentence and sentencing range

12  established for the category of offense committed by the

13  category of defendant, any pertinent policy statement issued by

14  the Sentencing Commission, the need to avoid unwarranted

03:16  15  sentence disparities among similarly situated defendants, and

16  the need to provide restitution to any victims, if applicable.

17      I have also considered the need for the sentence

18  imposed to reflect the seriousness of the offense, to promote

19  respect for the law, to provide just punishment, to afford

03:17  20  adequate deterrence to criminal conduct, to protect the public

21  from further crimes of the defendant, and to provide the

22  defendant with needed education or vocation training, medical

23  care or other correctional treatment in the most effective

24  manner.

03:17  25      Before I may impose a variance, I must follow a

1    three-step process that the Supreme Court established in *Gall*

2    *v. United States*.

3          First, I must calculate the guidelines as I've already

4    done.

03:17 5          Second, I must determine whether to apply any of the

6    guidelines departure policy statements to adjust the guidelines

7    range.  I have reviewed each of those policy statements and

8    found that none precisely fit and -- fit the individual needs

9    for this case.

03:17 10          Third, I must consider all of the sentencing factors

11    of Section 3553(a) which I listed few moments ago.

12          I've considered each of those factors in determining

13    whether to impose a variance.  The First Circuit has repeatedly

14    held that I should give particular consideration to the nature

03:18 15    and circumstances of the offense and of the offender.

16          In considering all of these factors, I've concluded

17    that a 120-month sentence is appropriate, in fact sufficient

18    but not greater than necessary, to be followed by five years of

19    supervised release, no fine, and a $100 special assessment.

03:18 20    This represents a downward variance from the sentencing

21    guidelines.

22          In determining this sentence, I considered the

23    seriousness of the offense and the quantities involved.

24    Attorney Porter, I heard everything you said, and I don't

03:18 25    disagree with any of it.  Mr. Westbrook was dealing large

1    quantities of methamphetamine, a highly dangerous drug that has

2    the potential to destroy lives, and he did so while possessing

3    a dangerous weapon.

4         Mr. Westbrook was selling large quantities of drugs.

03:19 5    His addiction clearly fueled his behavior and clearly

6    influenced his inability to find stable work in the past.  The

7    information Probation provided shows that Mr. Westbrook has

8    tried many times to address his addiction issues but has been

9    unsuccessful.

03:19 10        I hope, Mr. Westbrook, that you will be able to use

11    this time as an opportunity to commit yourself fully to the

12    treatment you need, and what you and your attorney report

13    suggests that you are taking that seriously and that this

14    prosecution may in fact be saving your life.

03:19 15        I've also considered Mr. Westbrook's difficult

16    upbringing and family situation, which do not excuse but may

17    help explain why he's in the situation that he is in today.

18        Lastly, the 120-month sentence is a minimum mandatory

19    sentence that I can impose.  It is still a significant

03:20 20    sentence, a decade of his life.  It's more than a third of his

21    current age that he will spend in prison.

22        Ten years is not a sentence that anyone will scoff at.

23    It is a sentence that is sufficient to deter others and

24    Mr. Westbrook, and an additional two and a half years is purely

03:20 25    punishment, which I find to be unnecessary in this case.  I

1    believe that it is more adequate to reflect the seriousness of

2    his offense and that 120 months is sufficient.

3            So, Mr. Westbrook, will you please stand.

4            Pursuant to the Sentencing Reform Act of 1984 and

03:21  5    having considered the sentencing factors enumerated in 18

6    U.S.C. Section 3553(a), it is the judgment of the Court that

7    the defendant, Joshua Westbrook, is hereby committed to the

8    custody of the Bureau of Prisons to be imprisoned for a term of

9    120 months.  This term includes the time in which Mr. Westbrook

03:21 10    has been held in custody, and I believe that dates back to

11    December 16th, 2021; is that correct?

12            U.S. PROBATION:  Yes, Your Honor.

13            THE COURT:  So it includes that time to the present.

14    The Court recommends participation in the Bureau of Prisons

03:22 15    RDAP program, the Residential Drug Abuse Program, due to the

16    defendant's substance use history and based on an informal

17    prescreening performed by the Probation Office.

18            Additionally, if the defendant is serious about his

19    recovery, the Court makes a judicial recommendation that he

03:22 20    participate in a Probation Office's C.A.R.E. program during the

21    term of supervised release if deemed to be an appropriate

22    candidate.  Upon release from imprisonment, Mr. Westbrook shall

23    be placed on supervised release for a term of five years.

24            The mandatory and standard conditions shall be set

03:23 25    additionally with regard to special conditions, that you must

1   participate in a substance use treatment program as outlined in

2   the presentence report on page 25.  It's number one.

3          And number two, that you must submit to substance use

4   testing, not to exceed 104 drug tests per year, as listed in

03:23  5   number two.

6          Additionally, the Court will impose the additional 3,

7   4, 5, and 6 special conditions that are further listed on page

8   26.  That includes that you're prohibited from consuming

9   alcoholic beverages, that you must participate in a mental

03:23  10   health treatment program as directed by the Probation Office.

11   You must take all medication as directed by your mental health

12   treatment provider, and you shall be required to contribute to

13   the cost of evaluation and treatment.

14          Within 72 hours of release from the custody of Bureau

03:24  15   of Prisons, you shall report in person to the district in which

16   you are released.  No fine is imposed as the defendant does not

17   appear to have the financial ability to pay a fine.  It is

18   further ordered that the defendant shall pay to the United

19   States a special assessment of $100.  That's per count, which

03:24  20   is a total $100, which shall be due immediately.

21          This sentence is imposed for all the reasons

22   previously stated and because the Court believes that this

23   sentence and all its components is reasonable and it is a

24   sentence that is sufficient but not greater than necessary to

03:24  25   accomplish the goals of sentencing consistent with 18 U.S.C.

1   Section 3553 and the Supreme Court's guidance.

2          Mr. Westbrook, you have the right to appeal your

3   conviction and sentence within 14 days of entry of judgment.

4   If you are unable to pay appeal costs, you may ask for

03:24  5   permission to appeal in forma pauperis.  This sentence is

6   hereby imposed as stated.

7          And Counsel, is there anything further?

8          MS. PORTER:  No, Your Honor.

9          THE COURT:  Thank you for your efforts.

03:25 10          MR. MALCOLM:  No, Your Honor.  Thank you.

11          THE COURT:  Thank you.  Best wishes to you, sir.

12          Mr. Westbrook is remanded to the custody of Bureau of

13   Prisons and U.S. Marshals.  Thank you.

14          THE CLERK:  This matter is adjourned.  All rise.

03:25 15          (Adjourned at 3:25 p.m.)

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Linda Walsh, Registered Professional Reporter

4     and Certified Realtime Reporter, in and for the United States

5     District Court for the District of Massachusetts, do hereby

6     certify that the foregoing transcript is a true and correct

7     transcript of the stenographically reported proceedings held in

8     the above-entitled matter, to the best of my skill and ability.

9          Dated this 29th day of April, 2024.

10

11

12          /s/ Linda Walsh

13          Linda Walsh, RPR, CRR

14          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25